```
                                          ┌─────────────────────────┐
                                          │ USDC SDNY               │
                                          │ DOCUMENT                │
                                          │ ELECTRONICALLY FILED    │
UNITED STATES DISTRICT COURT              │ DOC #:                  │
SOUTHERN DISTRICT OF NEW YORK             │ DATE FILED: 10/23/09    │
- - - - - - - - - - - - - - - - -x        └─────────────────────────┘
```

UNITED STATES OF AMERICA,              :

        - against -              :          **MEMORANDUM DECISION**

NATHANIEL L. ORTIZ, a/k/a "Nate,"  :          S15 08 Cr. 548 (DC)
and JOSE REYES,
                          :
                 Defendants.
                          :
- - - - - - - - - - - - - - - - -x

**APPEARANCES:**      PREET BHARARA, ESQ.
                   United States Attorney for the
                   Southern District of New York
                      By:  Todd Blanche, Esq.
                            Michael D. Maimin, Esq.
                            Assistant United States Attorneys
                   One St. Andrew's Plaza
                   New York, New York  10007
                   Attorneys for the United States of America

                   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
                      By:  Marc L. Greenwald, Esq.
                            Peter N. Tsapatsaris, Esq.
                            Sara H. Mark, Esq.
                            Isaac Nesser, Esq.
                   51 Madison Avenue, 22nd Floor
                   New York, New York  10017
                   Attorneys for Nathaniel L. Ortiz

                   FREEMAN NOOTER & GINSBERG
                      By:  Louis Marmorek Freeman
                   30 Vesey Street, Suite 100
                   New York, New York  10007
                   Attorney for Jose Reyes

**CHIN, District Judge**

On June 5, 2009, a jury convicted defendant Nathaniel L. Ortiz of conspiracy to distribute or possess with intent to distribute crack cocaine and possession of a firearm in furtherance of the conspiracy.  Ortiz moves, pursuant to Federal Rule of Criminal Procedure 29, for a judgment of acquittal and dismissal of the superseding indictment (the "Indictment").

Ortiz advances three arguments in support of the motion.   First,
he argues that the evidence was insufficient to prove the charged
conspiracy because of the lack of evidence as to three of the
years in question.   Second, he argues that there was a
substantial variance between the dates of the conspiracy alleged
in the Indictment and the proof adduced at trial.   Third, he
argues that the Indictment should be dismissed because
insufficient evidence was presented to the grand jury.

At oral argument, Ortiz's co-defendant, Jose Reyes,
joined the motion "to the extent that [his] position is not
inconsistent with [Ortiz's]."   (Oral Arg. Tr. at 5).   No papers
were filed on Reyes's behalf.

For the reasons set forth below, the motion is denied
as to both Ortiz and Reyes.

## DISCUSSION

The Indictment charged Ortiz and Reyes with a
conspiracy that continued "[f]rom at least in or about 2004, up
to and including in or about June 2008."   Ortiz's Rule 29 motion
is predicated primarily on what he regards as the Government's
failure to adduce sufficient evidence of a conspiracy in 2004,
2005, and 2006.[1]

## A.   Standard on a Rule 29 Motion

A defendant moving for a judgment of acquittal pursuant
to Rule 29 of the Federal Rules of Criminal Procedure based on

---

[1]     Ortiz, of course, disputes that a conspiracy existed
from 2007 to 2008 as well, but that is not a basis of this
motion.

the sufficiency of the evidence "faces a heavy burden." United States v. Glenn, 312 F.3d 58, 63 (2d Cir. 2002) (internal quotations omitted). The court must uphold a jury's guilty verdict if, after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, the court concludes that "'any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Medina, 944 F.2d 60, 66 (2d Cir. 1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Therefore, a jury's verdict will be affirmed "so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." United States v. Hamilton, 334 F.3d 170, 179 (2d Cir. 2003).

A conviction, however, cannot be based on "speculation and surmise alone." United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994). Thus, the Government "must do more than introduce evidence 'at least as consistent with innocence as with guilt.'" Id. (quoting United States v. Mulheren, 938 F.2d 364, 372 (2d Cir. 1991)).

## B. There Was Sufficient Evidence for the Years 2004, 2005, and 2006

Ortiz argues that the Court must enter a judgment of acquittal because there was no evidence that a conspiracy existed in 2005 and 2006, and there was "no reliable evidence" tying Ortiz to the conspiracy in 2004. He is incorrect on the law and the facts.

-3-

To prove a defendant guilty of conspiracy, the Government must prove that a conspiracy existed and that the defendant knowingly participated at some point -- not that he was active at all times during the duration of the conspiracy's life. "There is no requirement that the same people be involved throughout the duration of the conspiracy." United States v. Vanwort, 887 F. 2d 375, 383 (2d Cir. 1989). Here, the Government produced evidence both that the charged conspiracy existed from 2004 through 2008 and that Ortiz was a member of the conspiracy during its entire span. As the Government points out, it adduced at trial, inter alia, the following evidence as to the years before 2004 and continuing through 2006:

- Jonathan Santiago testified that in 2003, someone named "Javier" sold crack at 1269 Grand Concourse, and that "Javier" worked for Ortiz. (Trial Tr. at 108-15).

- Jose Reyes was convicted in 2004 for a sale of crack at 1269 Grand Concourse with an individual identified as the same "Javier" who, according to Santiago, sold crack for Ortiz. (Trial Tr. at 300).

- The crack sold by Reyes and Javier in 2004 was sold in the same black dime bags that Ortiz's crew used in 2007 and 2008 -- black dime bags that Officer Odalas Perez described as "very, very

-4-

rare." (Government Exhibits 44A and 45A; Trial Tr. at 279).

- Santiago testified that Ortiz was "dealing" at 1269 Grand Concourse when Santiago was 14 years old -- which would have been in 2004 or 2005. (Trial Tr. at 127).

- In late 2003, Lucecita Varela, Ortiz's wife, purchased a car for $12,491. She paid for the car in cash, and all the bills used were in a denomination under $100. (Gov. Exs. 103 & 103A).

- In 2005, Varela purchased two additional cars. (Gov. Ex. 103).

- William Velasquez testified that he witnessed what he believed to be drug sales at 1269 Grand Concourse in 2005 and 2006, and that one of the sellers he saw was someone that Velasquez knew worked for Ortiz. (Trial Tr. at 760, 740).

- In 2006, Varela purchased five additional vehicles, including a BMW, a Mercedes-Benz, an Infiniti, and a Chrysler Town & Country van. She paid for at least one of the vehicles in cash, with all the bills in a denomination under $100. Jose Taveras testified that Ortiz drove a BMW, a Mercedes-Benz, an Infiniti, and a Chrysler Town & Country van. (Gov. Ex. 103; Trial Tr. 355, 359-60).

■    During the years that Varela purchased these cars,
she did not report to the IRS any significant
income.   (Gov. Ex. 103B).[2]

Ortiz vigorously contests all of this evidence, arguing
that it proves nothing, is unreliable, is circumstantial,[3] and/or
is contradicted by other evidence in the record.  These are all
arguments that Ortiz's able counsel made to the jury, and
evidently the jury rejected them.  It is not this Court's role to
second-guess the inferences the jury drew, the weight it gave to
the evidence, or its resolution of conflicts in the evidence.

As for defendant Reyes, the Government also met its
burden with regard to his participation in the same conspiracy.
They adduced evidence that he was convicted for selling crack
cocaine as part of Ortiz's crew in 2004, and that he was back
selling with Ortiz's crew again in 2007, after he got out of
jail.  (Trial Tr. at 930).

## C.  Even If There Was a Variance, It Was Not Prejudicial

Ortiz argues that the Court must enter a judgment of
acquittal because the supposed lack of evidence of the existence

---

[2]    There was substantial evidence as to the conspiracy's
activities and defendants' activities in 2007 and 2008.

[3]    To the extent that Ortiz suggests the Government cannot
prove its case through circumstantial evidence, he is incorrect.
See United States v. Stewart, 485 F.3d 666, 671 (2d Cir. 2007)
("Both the existence of a conspiracy and a given defendant's
participation in it with the requisite knowledge and criminal
intent may be established through circumstantial evidence.").

-6-

of the conspiracy from 2004 to 2006 constitutes a prejudicial

variance.  I disagree.

## 1.  **Applicable Law**

A variance occurs when the evidence adduced at trial

proves facts "materially different" than the facts alleged in an

indictment.  United States v. Zingaro, 858 F.2d 94, 98 (2d Cir.

1988).  In most instances a variance will not require granting a

judgment of acquittal, because the Second Circuit employs a

fairly "relaxed" standard regarding "the effect of time

allegations."  United States v. Heimann, 705 F.2d 662, 666 (2d

Cir. 1983).  The Second Circuit has "permitted significant

flexibility in proof, provided that the defendant was given

notice of the 'core of criminality' to be proven at trial."  Id.

(quoting United States v. Sindona, 636 F.2d 792, 797-98 (2d Cir.

1980)).  A variance only warrants entry of a judgment of

acquittal when it results in "substantial prejudice" to the

defendant.  See United States v. Rigas, 490 F.3d 208, 226 (2d

Cir. 2007); United States v. McDermott, 918 F.2d 319, 326 (2d

Cir. 1990).  To determine whether a variance is prejudicial, the

court must decide "whether the variance infringes on the

'substantial rights' that indictments exist to protect -- 'to

inform an accused of the charges against him so that he may

prepare his defense and to avoid double jeopardy.'"  United

States v. Dupre, 462 F.3d 131, 141 (2d Cir. 2006) (quoting United

States v. D'Anna, 450 F.2d 1201, 1204 (2d Cir. 1971)).

-7-

In the Second Circuit, in general, "an indictment date
only needs to be substantially similar to the date established at
trial." United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996)
(internal citations and quotations omitted); United States v.
Morgenstern, 933 F.2d 1108, 1115 (2d Cir. 1991) (holding that
"the district court correctly instructed the jury that there had
to be a substantial similarity between the indictment and the
proof in order to find the defendant guilty") (internal citations
and quotations omitted); United States v. Valencia, 226 F.Supp.2d
503, 508 n.3 (S.D.N.Y. 2002) (Chin, J.), aff'd, 100 Fed. Appx. 17
(2d Cir. 2004) (conviction upheld where evidence at trial showed
narcotics activity only for five days out of the nineteen months
charged in the indictment); 1-3 Sand Modern Federal Jury
Instructions-Criminal § 3.01, Instr. 3-12 (recommending
substantial similarity test). But see United States v.
Nersesian, 824 F.2d 1294, 1323 (2d Cir. 1987) ("Where 'on or
about' language is used, the government is not required to prove
the exact date, if a date reasonably near is established.")
(citations omitted) (emphasis added).

In general, where the dates of a conspiracy proven at
trial are within the dates charged in the indictment, courts
conclude that the variance is not prejudicial. See Heimann, 705
F.2d at 666 ("Particularly with respect to allegations of time,
we have permitted proof to vary from the indictment provided that
the proof fell within the period charged."); United States v.
Wilson, 134 F.3d 855, 865 (7th Cir. 1998) ("If the conspiracy

-8-

charged in the indictment includes the smaller conspiracy found
by the jury, then the variance will not be fatal, since the
indictment would have sufficiently notified the defendants of the
Government's accusations."); United States v. Queen, 132 F.3d
991, 999 (4th Cir. 1997) (noting, in dicta, that "the trier of
fact may find that the starting date of a conspiracy begins
anytime in the time window alleged, so long as the time frame
alleged places the defendant sufficiently on notice of the acts
with which he is charged").  There are, however, exceptions.
See, e.g., United States v. Morales, 185 F.3d 74, 80 (2d Cir.
1999) (reversing RICO conviction where conspirators were
incarcerated for seven years of nine-year charged conspiracy).

## 2.  **Application**

As discussed above, there was sufficient circumstantial
evidence in the record from which a reasonable jury could have
concluded that a conspiracy existed from 2004 through 2006 (and
continuing to 2008) and that Ortiz was a member of the conspiracy
for the entire span.  Therefore, no variance existed.  The proof
at trial substantially matched the allegations of the Indictment.

Even assuming there was a variance, however, it would
not warrant a judgment of acquittal, because the purported
variance was not prejudicial.  First, all the evidence of a
conspiracy adduced at trial fell within the general period
charged in the Indictment.  The Second Circuit generally regards
variances within the charged period as non-prejudicial.  See
Heimann, 705 F.2d at 666.  Variances within the charged period

-9-

are non-prejudicial because they do not infringe on the "substantial rights" that indictments protect -- namely, informing the accused of the charges against him and avoiding double jeopardy. Dupre, 462 F.3d at 141. Variances that bring in evidence substantially outside of the charged period, on the other hand, pose the risk that the defendant will not be on notice of the nature of the charges against him, and that he will be at risk of double jeopardy if he is subsequently charged in conjunction with those earlier or later acts.

Here, there can be no question that Ortiz's rights were safeguarded. Ortiz knew precisely the nature of the charges against him and the evidence the Government would use to support those charges, and there is no doubt that the Government could not retry Ortiz again for the same 2004-2008 conspiracy.

Ortiz argues that the Government only decided to expand the time frame of the charged conspiracy between the first trial and the second trial as a maneuver to make admissible certain prejudicial evidence from the earlier years. This argument is rejected. First, as noted above, there was a basis for expanding the period of the conspiracy because there was proof that the conspiracy existed during the entire period from 2004 until 2008. Second, I find that the Government did not act in bad faith in any event. Accordingly, there is no prejudicial variance.

Morales does not, as the co-defendants argue, compel a different result. The facts of that case are different from the facts presented here. In Morales, the defendants were charged

-10-

with a RICO conspiracy beginning in 1987 and lasting until 1996. 185 F.3d at 80. In 1988, however, all the defendants either died or went to prison, and those who went to prison were not released until 1995. Id. The Second Circuit reversed the conviction on sufficiency of the evidence grounds, holding that because of the "length of incarceration and the dearth of evidence of activity between 1988 and 1995, no rational jury could have found beyond a reasonable doubt the existence of an enterprise lasting from 1987 to 1996." Id. at 81. Here, there is not, as discussed above, a "dearth of evidence of activity" from 2004 to 2006. Rather, adequate circumstantial evidence was adduced at trial for every year of the charged conspiracy. Moreover, unlike the defendants in Morales, Ortiz was not charged with a RICO conspiracy, so there was no need for the government to prove the existence of a "continuing criminal enterprise." Proof of the existence of an "enterprise" during the seven years of the defendants' incarceration was central to the outcome in Morales. Thus, Morales is distinguishable.[4]

For these reasons, I conclude that there was no variance, as there is evidence in the record to support the jury's verdict that a conspiracy existed for each of the years charged in the Indictment. Even if there was a variance, though,

---

[4] United States v. Russano, on which Ortiz also relies, is also distinguishable. In Russano, the conspiracy charged was from 1951 until 1957, but no evidence was adduced at trial for the years 1952 to 1955. 257 F.2d 712, 713 (2d Cir. 1958). As noted above, it is not the case here that there is no evidence for any of the years charged in the Indictment.

it was not prejudicial.  The same analysis applies to Reyes.

## D.   The Alleged Defects Before the Grand Jury Do Not Warrant Dismissal of the Indictment

Ortiz argues that the Indictment should be dismissed because it is "the product of testimony and evidence that was incorrect and wholly insufficient to produce a valid bill of charges."  (Ortiz Mem. at 17).  Specifically, Ortiz takes issue with Special Agent Kolvek's grand jury testimony in which she testified that Ortiz had been involved in two pre-2007 "hand-to-hand sale arrests."  (Nesser Decl. Ex. A at 14-15).  As the Government later conceded, one of these arrests did not involve crack cocaine, and the Court struck the other arrest from admission at trial because the evidence tying Ortiz to the sale was so weak.  Ortiz now moves for dismissal of the Indictment based on Special Agent Kolvek's "incorrect and conclusory testimony."  The motion is denied.

Even assuming the testimony was inaccurate, "[i]t is well settled that a guilty verdict at trial 'remedies any possible defects in the grand jury indictment.'"  United States v. Lombardozzi, 491 F.3d 61, 80 (2d Cir. 2007) (quoting United States v. Eltayib, 88 F.3d 157, 173 (2d Cir. 1996)); United States v. Mechanik, 475 U.S. 66, 73 (1986) (holding that "the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings").  Ortiz responds to this line of cases by arguing that the jury

-12-

could not have cured the defect, because the defect was insufficient evidence of a conspiracy in 2004, 2005, and 2006. The Court cannot, however, dismiss a facially valid indictment based on insufficient evidence.[5]   See United States v. Calandra, 414 U.S. 338, 345 (1974) (holding that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence"); United States v. Casamento, 887 F.2d 1141, 1183 (2d Cir. 1989) (holding that facially valid indictment "may not be challenged on the ground that it is based on inadequate evidence"); United States v. Butler, 351 F. Supp. 2d 121, 126 (S.D.N.Y. 2004) (Lynch, J.) ("[I]t is hornbook law that a federal defendant may not challenge a facially-valid indictment . . . on the ground that it is based on insufficient evidence."). Accordingly, Ortiz's motion to dismiss the Indictment is denied.

## CONCLUSION

For the foregoing reasons, the motion is denied in its entirety.

Dated:     New York, New York
           October 23, 2009

DENNY CHIN
United States District Judge

---

[5]     Ortiz does not argue that the Indictment was facially defective.