UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                    :

        - against -                        :

NATHANIEL L. ORTIZ,                         :

              Defendant.      :

- - - - - - - - - - - - - - - - -x

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____            │
│ DATE FILED: 7/25/13              │
└─────────────────────────────────┘
```

**OPINION**

08 Cr. 548 (DC)
11 Civ. 8387 (DC)

**APPEARANCES:**

PREET BHARARA, ESQ.
United States Attorney for the
Southern District of New York
    By:  Todd Blanche, Esq.
        Michael Douglas Maimin, Esq.
        Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York  10007

NATHANIEL L. ORTIZ
Defendant Pro Se
DIN: 08A3227
Downstate Correctional Facility
121 Red Schoolhouse Road
P.O. Box F
Fishkill, New York  12524

**CHIN, Circuit Judge**

On June 5, 2009, a jury convicted defendant Nathaniel
L. Ortiz of conspiracy to distribute and to possess with intent
to distribute crack cocaine, in violation of 18 U.S.C. §§ 812
and 841(a)(1) and (b)(1)(A), and possession of a firearm in
furtherance of the drug conspiracy, in violation of 18 U.S.C.
§ 924(c)(1)(B)(ii) and (c)(2).  On October 28, 2009, I sentenced
Ortiz principally to a term of imprisonment of life.  On May 30,
2013, I reduced Ortiz's sentence to 360 months' imprisonment.

Before the Court is Ortiz's pro se motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis that (1) with its proof at trial the government constructively amended the superseding indictment; (2) I erred in admitting certain co-conspirator testimony; (3) I failed to require the jury to answer special interrogatories; and (4) the Second Circuit erred on direct appeal. For the reasons set forth below, the motion is denied.[1]

## BACKGROUND

### A.   The Facts

From at least 2004 through 2008, Ortiz served as the leader of the Grand Concourse Crew, a crack-distribution organization centered at the 1269 Grand Concourse housing complex in the Bronx, New York. (PSR ¶ 24).[2] The organization

---

[1]   Because I find that "it plainly appears from the face of the [section 2255] motion . . . and the prior proceedings in the case that [Ortiz] is not entitled to relief," I did not order the United States Attorney to file an answer to the instant motion. See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

[2]   References are as follows: "Ind't" to the grand jury indictment filed September 16, 2008; "Superseding Ind't" to the superseding indictment filed May 4, 2009; "Tr." to the transcript of Ortiz's retrial beginning May 26, 2009; "Verdict Form" to the undated verdict form given to the jury in Ortiz's retrial; "PSR" to the Presentence Investigation Report, dated August 10, 2009; "Sent. Tr." to the transcript of Ortiz's sentencing on October 28, 2009; "App. Br." to Ortiz's appellate brief to the Second Circuit, dated March 5, 2010; "Mot." to Ortiz's § 2255 motion, dated November 17, 2011; and "Mem. Dec." to my Memorandum Decision entered May 30, 2013.

sold "crack" cocaine twenty-four hours a day, seven days a week, in signature black plastic baggies representing the dark front gates of 1269 Grand Concourse. (Mem. Dec. at 2). Ortiz used apartments within the housing complex to store drugs and guns and hide from the police, and he recruited numerous children into the Grand Concourse Crew. (Sent. Tr. 33:6-14; Mem. Dec. at 2).

As the leader of the organization, Ortiz supplied his managers with crack. (Tr. 75, 136-37, 145-46). The managers distributed the crack to workers who, in turn, sold the crack and paid the managers from the proceeds. The managers were then responsible for remitting the money to Ortiz. (Tr. 102-03, 136-37, 661-64).

Beginning in early 2007, the Federal Bureau of Investigation and the New York City Police Department conducted an investigation during which they used confidential informants to purchase crack and guns from members of the Grand Concourse Crew. (Tr. 273-82, 299-301, 459-61, 472-80, 860). At trial, the government offered video recordings of various purchases of crack cocaine from members of the Grand Concourse Crew, including a video, corroborated by telephone records, of Jorge Marcial -- one of Ortiz's customers -- calling Ortiz to obtain a large order of crack cocaine. (Tr. 862-63, 911-22; see also Tr. 906 ("[In the video recording] [s]omeone asked the question,

who's that, Nat[haniel Ortiz], and then Marcial responds,
yeah.").

## B.   Prior Proceedings

### 1.   Indictment

Ortiz and fourteen codefendants were indicted on
September 16, 2008.  Count One charged the defendants with
conspiracy to distribute and possess with intent to distribute
crack cocaine, in violation of 18 U.S.C. §§ 812 and 841(a)(1)
and (b)(1)(A).  Count Two charged the defendants with possession
of a firearm in furtherance of the drug conspiracy, in violation
of 18 U.S.C. § 924(c)(1)(B)(ii) and (c)(2).  (Ind't ¶ 1-2).  The
indictment described the offenses as occurring "from at least in
or about 2007, up to and including in or about June 2008."
(Ind't ¶ 1).  All of the defendants pled guilty except Ortiz and
Jose Reyes.  (PSR ¶¶ 6, 8-22).

### 2.   Trial, Superseding Indictment and Retrial

The trial of the charges against Ortiz and Reyes began
on April 13, 2009.  On April 23, 2009, after the jury deadlocked
on both counts as to both Ortiz and Reyes, I declared a
mistrial.

On May 4, 2009, the government filed a superseding
indictment against Ortiz and Reyes.  The superseding indictment
asserted the same two counts but it broadened the timeframe of
the conspiracy, charging Ortiz with involvement in a conspiracy

running "from at least in or about 2004, up to and including in
or about June 2008." (Compare Superseding Ind't ¶ 1, with Ind't
¶ 1).

        The second trial commenced on May 26, 2009.  The
government called sixteen witnesses, including four cooperating
witnesses.  All the cooperating witnesses testified that Ortiz
was the leader of the Grand Concourse Crew and identified
several other members of his crew.  (Tr. 75-76, 93-108, 119,
315-16, 515-19, 653-58).

        Of particular relevance to Ortiz's present motion, on
May 27, 2009, the government's first cooperating witness,
Jonathon Santiago, took the stand.  (Tr. 74-260).  Santiago was
thirteen when he first met Ortiz.  In 2007, when he was
approximately sixteen, he started selling crack for Ortiz.  (Tr.
119, 127, 135).  Santiago identified some of Ortiz's workers
including Javier, "a regular worker," who started selling crack
for Ortiz in 2003.  (Tr. 108).  Santiago testified that Javier
told him that he got his crack cocaine from Ortiz.  (Tr. 114-
15).  According to Santiago's testimony, Javier stopped selling
Ortiz's crack before 2007 because "he was deported."  (Tr. 108).

        On June 5, 2009, the jury convicted Ortiz on both
counts and Reyes on Count One.  Ortiz moved, pursuant to Rule
29(c) of the Federal Rules of Criminal Procedure, for a judgment
of acquittal.  I denied the motion in a written decision filed

on October 23, 2009.  See United States v. Ortiz, 666 F. Supp. 2d 399, 406 (S.D.N.Y. 2009).

### 3.   Sentencing Hearing

On October 28, 2009, Ortiz appeared for sentencing. He submitted a sentencing letter arguing that the 18 U.S.C. § 3553(a) factors supported a 240-month sentence because (1) he had never been imprisoned for a significant term before; (2) he was a loving and supportive family member, capable of learning from his mistakes; (3) the low sentences imposed on his co-defendants justified at most a 20-year sentence for him; and (4) the Guidelines range in this case was unreasonable.  (App. Br. 20).

The Guidelines calculation was based, in part, on a finding that Ortiz was responsible for 4.5 kilograms or more of crack cocaine.  (PSR ¶ 64).  Under the then-applicable Guidelines, his base offense level was 38.  See United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(1) (2008) (base offense level of 38 for 4.5 kilograms or more of cocaine base). (PSR § 64; Sent. Tr. 24:20-21).  I applied a four-level enhancement for a leadership role and a two-level enhancement for involving minors, resulting in an adjusted offense level of 44.  (PSR ¶¶ 67, 69, 74).  His criminal history category was IV; hence, the applicable Guidelines range was life imprisonment. (Id. ¶¶ 89, 132).  I sentenced Ortiz principally to a term of

life imprisonment on the drug conspiracy charge and zero months'
imprisonment on the gun charge.  (Sent. Tr. 35:5-7).

### 4.   <u>Direct Appeal</u>

On November 18, 2009, Ortiz appealed his sentence and
conviction to the Second Circuit.  Ortiz argued that (1) the
evidence was insufficient to prove the charged conspiracy in
2004, 2005, and 2006; (2) I had erred by admitting into evidence
certain hearsay statements; and (3) his sentence was
substantively unreasonable.  <u>See</u> <u>United States v. Ortiz</u>, 394 F.
App'x 722, 724 (2d Cir. 2010) (summary order).  The Second
Circuit, however, rejected each of these arguments and affirmed
both the sentence and the conviction.  <u>Id.</u> at 726.

On February 10, 2011, Ortiz filed a petition for a
writ of certiorari to the United States Supreme Court.  The
petition was denied on March 21, 2011.  <u>See</u> <u>Ortiz v. United
States</u>, 131 S. Ct. 1705 (2011).

### 5.   <u>Post-Appeal Motions</u>

On November 17, 2011, proceeding <u>pro se</u>, Ortiz filed
the instant motion to vacate, set aside, or correct his sentence
pursuant to 28 U.S.C. § 2255.[3]

---

[3]      "A motion by a federal prisoner for postconviction
relief under 28 U.S.C. § 2255 is subject to a one-year time
limitation that generally runs from the date on which the
judgment of conviction becomes final."  <u>Clay v. United States</u>,
537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255) (internal
quotation marks omitted).  Here, the motion was filed within one

On April 16, 2012, following the amendment to the crack sentencing guidelines, Ortiz moved pursuant to 18 U.S.C. § 3582(c)(2) for resentencing under the Fair Sentencing Act of 2010 (the "FSA"). See Pub. L. No. 111-220, 124 Stat. 2372. Ortiz asked that I reduce his life sentence to 360 months' imprisonment and that the sentence, which was to be served consecutively to a state court sentence he was then serving, run concurrently with his state court sentence.

I held Ortiz's § 2255 motion pending resolution of the § 3582(c) motion. On May 30, 2013, I granted the motion for a reduction and reduced Ortiz's sentence to 360 months. I denied his request for concurrent sentences. (Mem. Dec. at 7). I now consider the § 2255 motion.

### DISCUSSION

Ortiz argues that (1) the government, by introducing at trial evidence of powder cocaine sales, constructively amended the superseding indictment to include a powder cocaine conspiracy charge; (2) I erroneously admitted Santiago's testimony because it was hearsay and "unreliable"; (3) I erred by declining to provide the jury with special interrogatories asking it to identify what years the conspiracy was in existence; and (4) the Second Circuit erred on direct appeal.

---

year after the conviction became final and therefore was timely. See 28 U.S.C. § 2255(f).

His claims are barred procedurally in part and all four claims
fail on the merits.

## I.    Procedural Bar

Ortiz is procedurally barred from making his first and
third arguments and the argument that Santiago's testimony was
"unreliable" in his second argument because he failed to raise
the issues in his direct appeal.

### A.    Applicable Law

A district court lacks jurisdiction to consider a
§ 2255 claim alleging a constitutional error unless that issue
was first raised on direct appeal.  See Campino v. United
States, 968 F.2d 187, 190 (2d Cir. 1992).  Where a defendant
fails to raise an alleged constitutional violation on direct
appeal, he may not raise such a claim on collateral review
unless he can show (1) "cause" for his failure to raise the
claim on appeal; and (2) actual "prejudice" due to the alleged
violation.  See Reed v. Farley, 512 U.S. 339, 354 (1994).  The
good cause prong requires the movant to show that something
"external to the petitioner, something that cannot fairly be
attributed to him," resulted in his failure to raise a claim on
direct appeal.  Coleman v. Thompson, 501 U.S. 722, 753 (1991).

### B.    Application

Three of Ortiz's arguments -- that (1) his superseding
indictment was constructively amended; (2) Santiago's testimony

was "unreliable" because he was young and had consumed marijuana at the time; and (3) I erred by not instructing the jury to determine what years the conspiracy was in existence -- could have been, but were not, raised on direct appeal.  Ortiz does not offer any explanation for his failure to raise these claims and thus he is barred from asserting them now.

## II.  **Merits**

Even assuming there is no procedural bar, all of Ortiz's claims must be denied on the merits.

### A.  **Constructive Amendment**

Ortiz argues that his superseding indictment was constructively amended by the proof at trial because the government allegedly introduced evidence of a powder cocaine conspiracy whereas the superseding indictment only charged him with a crack cocaine conspiracy.[4]  For the reasons set forth below, I reject this argument.

#### 1.  **Applicable Law**

An indictment has been constructively amended when "the proof at trial established a basis for conviction that was broader than the basis stated in the indictment."  United States v. Zingaro, 858 F.2d 94, 99 (2d Cir. 1988) (citing United States v. Miller, 471 U.S. 130, 138-40 (1985)).  "To prevail on a

_____

[4]    Ortiz did not object to this evidence at trial and therefore it is also barred on the merits.  See McLean v. Conway, No. 06 Civ. 0807(AJP), 2006 WL 2405067, at *17 (S.D.N.Y. Aug. 21, 2006).

constructive amendment claim, a defendant must demonstrate that
either the proof at trial or the trial court's jury instructions
so altered an essential element of the charge that, upon review,
it is uncertain whether the defendant was convicted" of the
charge in the grand jury's indictment.  <u>United States v. Frank</u>,
156 F.3d 332, 337 (2d Cir. 1998).  A constructive amendment is a
<u>per se</u> violation of the Fifth Amendment and requires reversal.
<u>Zingaro</u>, 858 F.2d at 98.

### 2. **Application**

Ortiz argues that the government's proof at trial
constructively amended the superseding indictment.  He argues
that because the government introduced evidence of a powder
cocaine conspiracy, but the superseding indictment only charged
him with a crack cocaine conspiracy, his superseding indictment
was constructively amended in violation of the Fifth Amendment.
These arguments are without merit.

Ortiz contends that the government's direct
examination of one witness, William Anthony Velasquez,
constructively amended the superseding indictment because the
witness admitted to selling powder cocaine for Ortiz:

> GOVERNMENT:  [D]id you also sell any other
> drugs to the organization?
>
> VELASQUEZ:  Yes.  I've sold powder cocaine.
>
> GOVERNMENT: Who did you sell that for?

> VELASQUEZ:  I sold that for Nat[haniel
> Ortiz].

(See Tr. 675).  This testimony did not, however, "'so alter[] an
essential element of the charge that . . . it is uncertain
whether the defendant was convicted of conduct that was the
subject of the grand jury's indictment.'"  United States v.
Rigas, 490 F.3d 208, 227 (2d Cir. 2007) (quoting United States
v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003)).  The government
presented sixteen witnesses -- including Velasquez -- who
testified about Ortiz's involvement in a crack cocaine
conspiracy.  (See, e.g., Tr. 640 ("GOVERNMENT:  Looking around
this courtroom today do you see anybody with whom you sold
crack?  VELASQUEZ:  Yes . . . . I see Nat[haniel Ortiz].").
Ortiz was clearly convicted of conspiring to distribute and to
possess with intent to distribute crack cocaine.  See Salmonese,
352 F.3d at 620-22 (no constructive amendment where "core
criminality" in fraud conspiracy case was selling stripped
warrants and the government offered proof of unalleged sales);
United States v. Danielson, 199 F.3d 666, 669 (2d Cir. 1999) (no
constructive amendment in firearm possession charge case where
government offered proof that shells, rather than entire rounds
as charged in the indictment, had traveled in interstate
commerce).  Velasquez's passing reference to powder cocaine
sales did not change the core criminality of the charged
conduct.

Ortiz argues that the jury was given copies of the charge that erroneously stated that the charged conspiracy was one to distribute or possess "cocaine" when the charge should have stated "crack cocaine." This is true. But I corrected the error. First, I correctly instructed the jury that "the object of the conspiracy in Count One is the distribution or possession of cocaine base in a form commonly known as crack with the intent to distribute it." (See Tr. at 1134, 1170-71 (noting that I said "crack cocaine"). Second, following the charge, defense counsel pointed out that the copies of the jury charge given to the jurors incorrectly referred to a cocaine conspiracy (Tr. 1170-71), rather than a crack cocaine conspiracy. I promptly corrected this error. (See Tr. 1173 ("Ladies and gentlemen . . . Page 14, at the bottom of the page, where it says the agreement to distribute cocaine or possess cocaine, please insert the word crack, to distribute crack cocaine or possess crack cocaine.")). There is no chance that the jury was confused. See United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994) ("[J]urors are presumed to follow instructions from the court.").

Additionally, because every question on the verdict sheet referred only to crack cocaine, and never to powder cocaine, the jury could not have been confused about the question it was being asked to decide. (See Verdict Form; see

<u>also</u> Tr. 1063 ("GOVERNMENT [Summation]:  [The evidence] clearly
demonstrates beyond a reasonable doubt that Nate [was a member]
of this crack conspiracy at 1269 Grand Concourse and that Nate
supplied guns to that conspiracy in order to keep that
conspiracy safe.").

     Accordingly, the motion is denied in this respect.

**B.**    **Testimony of Jonathon Santiago**

     Ortiz makes two arguments regarding Santiago's
testimony:  (1) Santiago's testimony about his conversation with
Javier was inadmissible hearsay; and (2) Santiago lacked
foundation and perception for his testimony.  For the reasons
set forth below, both arguments fail.

     **1.**    **Hearsay**

          **a.**    **Applicable Law**

     Hearsay is "an out-of-court statement presented for
the truth of the matter stated." <u>Dutton v. Evans</u>, 400 U.S. 74,
105 n.7 (1970).  "The hearsay rule, Fed. R. Evid. 802, is
premised on the theory that out-of-court statements are subject
to particular hazards." <u>Williamson v. United States</u>, 512 U.S.
594, 598 (1994).  For example, "[t]he declarant might be lying;
he might have misperceived the events which he relates; he might
have a faulty memory; [or] his words might be misunderstood or
taken out of context by the listener." <u>Id.</u>

-14-

Certain out-of-court statements are less susceptible to these hazards and therefore exempt from the general rule that hearsay is inadmissible. Id. For example, a statement against one's penal interest is not excluded by the hearsay rule, when the declarant is unavailable at trial.[5] See Fed. R. Evid. 804(b)(3)(B) (if declarant is unavailable as witness, "[a] statement that is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability," is not excluded by hearsay rule).

A declarant is considered unavailable if he "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony." Fed. R. Evid. 804(a)(5)(B).

b.   **Application**

Ortiz argues that Santiago's testimony about his conversation with Javier was hearsay and should not have been admitted.[6] Santiago testified that Javier had told Santiago that

---

[5]     Because "reasonable people . . . tend not to make self-inculpatory statements unless they believe them to be true," Williamson v. United States, 512 U.S. 594, 599 (1994), self-inculpatory statements have a higher likelihood of truthfulness.

[6]     Ortiz raised this argument in his direct appeal to the Second Circuit. The Second Circuit, however, never reached the merits of this argument. See United States v. Ortiz, 394 F.

he was waiting for Ortiz to bring him drugs.  (Tr. 109).  In response to Ortiz's objection at trial, I determined that Javier was unavailable and permitted Santiago to testify about what Javier had told him under the statement against penal interest exception to the hearsay rule.  See Fed. R. Evid. 804(b)(3)(B).  (See also Tr. 118 ("The declarant, Javier, is unavailable.  The witness testified that Javier was deported at the time.  At the time that Javier made the statement [to Santiago], [it was] against Javier's interest as it tended to subject [] him to criminal liability.")).

First, as a factual matter, Ortiz has failed to show that my finding that Javier was not in the United States was clearly erroneous.  See Amadeo v. Zant, 486 U.S. 214, 223 (1988) (a trial court's findings of fact will be set aside only if they are "clearly erroneous"); see also United States v. Dovico, 261 F. Supp. 862, 869 (S.D.N.Y. 1966) ("Whether the [declaration against interest exception] is satisfied so that the declaration is admissible as a matter of law is preliminarily a question of fact for the Court.").  He does not suggest that Javier had not been deported or was otherwise present in the United States.  Ortiz also argues that Javier "was not proven unavailable by any sufficient good faith effort."  (Mot. at 48-49).  This argument

_____

App'x 722, 725 (2d Cir. 2010) ("In light of the discussion above, we need not determine whether the district court abused its discretion in admitting certain hearsay statements from an unavailable witness.").

fails.  There was a sidebar.  I excused the jury for further
questioning of Santiago, and I found, based on his testimony,
that Javier was unavailable, and that, because this was a
statement against his penal interest, the statement was
admissible.  (Tr.  118).

Second, even if Javier actually was available at the
time, it is highly unlikely that he would have testified.  The
statement was clearly against his penal interest.  See United
States v. Lieberman, 637 F.2d 95, 103 (2d Cir. 1980) (finding
defendant's statement that "he had packed the dishpacks [with
marijuana] was clearly self-incriminating" and weighed in favor
of admitting testimony).  Javier's statement implicated him in a
narcotics conspiracy with Ortiz.  (See Tr. 116 ("It's clear from
the context of what he just testified about . . . that Javier
was talking about drugs, which makes it a statement against his
interest.")).

Third, although the Second Circuit never reached the
merits of this argument, it noted that any error would be
harmless because of the overwhelming evidence of the crack
conspiracy for 2007 and 2008.  See Ortiz, 394 F. App'x at 725.

Accordingly, the motion is denied in this respect.

2.   **Foundation and Perception**

a.   **Applicable Law**

Rule 602 of the Federal Rules of Evidence provides, in relevant part: "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; see also Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 764 (2d Cir. 1991) (witness has personal knowledge if he testified from "general observation and knowledge, and not upon conjecture or hearsay"). Whether a witness is competent to testify is a question for the trial judge. See United States v. Roman, 884 F. Supp. 126, 127 (S.D.N.Y. 1995); see also Fed. R. Evid. 601 ("Every person is competent to be a witness except as otherwise provided in these rules.").

Rule 701(a) of the Federal Rules of Evidence provides that a lay witness may only offer opinions that are "rationally based on [his] perception." Fed. R. Evid. 701(a). "The rational-basis requirement 'is the familiar requirement of first-hand knowledge or observation.'" United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992) (quoting Fed. R. Evid. 701 Advisory Committee Note on the 1972 proposed rules).

b.   **Application**

Ortiz argues that Santiago's testimony regarding his conversation with Javier was not admissible because (1) Santiago

-18-

lacked foundation and personal knowledge to make the statement;
and (2) certain factors, such as Santiago's age and his use of
marijuana, affected his "perception," as defined in Rule 701 of
the Federal Rules of Evidence.   Ortiz argues that Santiago's
"sensory perceptions, reasonably distorted from the daily
consumptions of marijuana, at thirteen years of age," affected
the credibility of his testimony regarding Javier's involvement
in the conspiracy.   (Mot. at 47).   The arguments fail.

        Outside the presence of the jury, I found that
although "[Santiago] was equivocal at times," he was competent
to testify.   (Tr.   118).   Ortiz has not shown that this finding
was clearly erroneous.   See Wheeler v. United States, 159 U.S.
523, 524-25 (1895) ("The decision of th[e] question [of whether
a very young boy has sufficient intelligence to be competent as
a witness] rests primarily with the trial judge" and "will not
be disturbed on review, unless . . . it is clear that it was
erroneous."); see also Tromello v. DiBuono, 132 F. Supp. 2d 82,
85 (E.D.N.Y. 2000) ("Even a person who has indisputably been
determined to be insane, and to be suffering from 'visual and
auditory hallucinations with marked memory defect,' is not
necessarily incompetent to testify." (quoting People v. Rensing,
14 N.Y.2d 210, 213-14 (1964)).

        To the extent that Ortiz relies on Rule 701, and not
Rules 601 and 602, the argument also fails.   As Santiago was

testifying to facts (see Tr. 112-15), and not offering any opinion, Rule 701 does not apply. See Fed. R. Evid. 701(a) ("[T]estimony in the form of an opinion is limited to one that is rationally based on the witness's perception." (emphasis added)). Additionally, as the Second Circuit noted, any error in admitting the testimony would have been harmless. See Ortiz, 394 F. App'x at 725 ("[W]e need not determine whether the district court abused its discretion in admitting certain [] statements from an unavailable witness. Such an error would be harmless in light of the overwhelming evidence for 2007 and 2008.").

Accordingly, the motion is denied in this respect.

C.   **Special Interrogatories**

Ortiz contends that I erred by failing to give the jury special interrogatories. The argument is rejected.

1.   **Applicable Law**

A trial court may request from a jury a general verdict accompanied by answers to interrogatories. See Fed. R. Civ. P. 49(b); see also United States v. Wilson, 629 F.2d 439, 442-43 (6th Cir. 1980) (noting that, although they are permitted, the Federal Rules of Criminal Procedure do not make a provision for special interrogatories). Interrogatories are "written findings of fact." Lavoie v. Pac. Press & Shear Co., 975 F.2d 48, 53 (2d Cir. 1992). "Under Rule 49(b), the jury[,]

after being fully instructed[,] answers the interrogatories, renders a general verdict and the trial court enters judgment on the jury's verdict." Id. Whether to use special interrogatories lies in the broad discretion of the district court. See United States v. Ogando, 968 F.2d 146, 149 (2d Cir. 1992) (affirming trial judge's decision to not use special interrogatories in criminal case); see also United States v. Boonphakdee, 40 F.3d 538, 542-43 (2d Cir. 2004) (no abuse of discretion in conspiracy case where the district judge refused to submit special interrogatories concerning quantity of heroin).

### 2.   Application

At trial, Ortiz requested that I submit special interrogatories to the jury to determine the specific years, from 2004 to 2008, during which the crack conspiracy was in existence. (Tr. 1205). This request, however, came after the jury was ready to announce its verdict. (Id.).

The request came too late. In United States v. Aiello, 864 F.2d 257 (2d Cir. 1988), the Second Circuit held that the district court did not abuse its discretion in denying defendant's request for special interrogatories where the request was made after the jury had been deliberating for four hours. Id. at 264-65. Here, the jury had already announced that it had reached a verdict, and it did so after six hours of

deliberations.  (Tr. 1205).  In light of the timing of his
request, Ortiz has failed to show that I abused my discretion
when I denied his request for special interrogatories.  See
Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (the
district court's application of legal standards to the facts of
a case is reviewed only for abuse of discretion).

     Additionally, to the extent that Ortiz argues that
there was a substantial variance between the dates of the
conspiracy alleged in the indictment and the proof adduced at
trial, this argument fails.  The Second Circuit already
determined that sufficient evidence supported the jury's finding
that defendant was a member of the conspiracy from 2004 to 2008.
Ortiz, 394 F. App'x at 725 (noting that "an array of
circumstantial evidence" was "sufficient for a rational jury to
infer [Ortiz's] continued participation, dating back to 2004").

     Accordingly, the motion is denied in this respect.

**D.**   **Error on Appeal**

     Finally, Ortiz argues that, on direct appeal, the
Second Circuit failed to give his arguments a "full, complete
and meaningful review." (Mot. at 71).  In my role as a district
court judge, I cannot review the decision of the Court of
Appeals.  See Ahcom Ltd. V. Bond Commodities Ltd., No. 09 Civ.
8276, 2010 WL 445195, at *1 (S.D.N.Y. Feb. 8, 2010) ("[S.D.N.Y.]
is bound by Second Circuit.").

Accordingly, the motion is denied in this respect.

### CONCLUSION

For the reasons set forth above, Ortiz has failed to show a basis for relief under 28 U.S.C. § 2255.  Accordingly, his petition for relief is denied.  Because he has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability.  See 28 U.S.C. § 2253 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act).  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this order would not be taken in good faith.

SO ORDERED.

Dated:   New York, New York
         July 25, 2013

DENNY CHIN
United States Circuit Judge
Sitting by Designation

-23-